☑ Original ☐ D

CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) **23-M-474 (SCD)** |
| Gray Apple iPhone in purple case, with 3-lens camera on property inventory number 23-001549-3 (Target Phone 1) and a rose gold Apple iPhone with 3 lens camera inventory number 23-001549-2 (Target phone 2), stored at the Franklin Police Department property room | ) Case No. |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the **Eastern** District of **Wisconsin** *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before **10-13-23** *(not to exceed 14 days)*

☑ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to **Magistrate Judge Stephen C. Dries** . *(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*

☐ for _____ days *(not to exceed 30)* ☑ until, the facts justifying, the later specific date of **03/27/2024** .

Date and time issued: **9-29-23 9:10 am**

*Judge's signature*

City and state: **Milwaukee, Wisconsin**

Magistrate Judge Stephen C. Dries
*Printed name and title*

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# ATTACHMENT A

## Premises to Be Searched

The below-described **Target Phones**, which are securely stored at the Franklin Police Department property room, located at 9455 West Loomis Road, Franklin, Wisconsin; to wit:

- A gray Apple iPhone in purple case with 3-lens camera on property inventory number 23-001549-3.

- A rose gold Apple iPhone with a 3-lens camera on property inventory number 23-001549-2.

# ATTACHMENT B

## Evidence to Be Seized

All records on the electronics described in Attachment A that relate to violations of Title

18, United States Code, Section 1591(a) (sex trafficking by force, fraud, or coercion) involving

Dantavia Rule, including:

a. All stored electronic communications, including email, instant messaging, text messaging, multimedia messaging, and communications in third party apps;

b. All contact lists and records of communications with those contacts, including call logs and written messages of any kind;

c. All images, videos, travel records, information related to the identity of victims, and any other content or records on the phone.

d. All photographs or videos;

e. All records evidencing travel and device location information, including GPS locations, map or navigation apps, phone tracking apps, and Internet Protocol addresses;

f. All web browsing history;

g. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, calendars, and saved usernames and passwords.

As used above, the terms "records" and "information" include all of the foregoing items of

evidence in whatever form and by whatever means they may have been created or stored, including

any form of computer or electronic storage and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored

information seized or copied pursuant to this warrant in order to locate evidence, fruits, and

instrumentalities described in this warrant. The review of this electronic data may be conducted

by any government personnel assisting in the investigation, who may include, in addition to law

2

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3



CLERK'S OFFICE
A TRUE COPY
Sep 29, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Gray Apple iPhone in purple case, with 3-lens camera on property inventory number 23-001549-3  (Target Phone 1) and a rose gold Apple iPhone with 3 lens camera inventory number 23-001549-2 (Target phone 2), stored at the Franklin Police Department property room | )<br>)<br>)<br>)<br>)<br>)<br>)    Case No.   **23-M-474 (SCD)** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, Section 1591(a)(1), (b)(1) | Sex trafficking by force, fraud, or coercion |

The application is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of __180__ days *(give exact ending date if more than 30 days:* __03/27/2024__ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.



*Applicant's  signature*

Kathrine Karlsen,  FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

__telephone__ *(specify reliable electronic means)*.

Date: __9-29-23__

*Judge's signature*

City and state: __Milwaukee, WI__

Magistrate Judge Stephen C. Dries
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—an electronic device—which is currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since May of 2019. I have been assigned to the FBI Milwaukee Child Exploitation and Human Trafficking Task Force since July 2022. My duties include investigating violations of federal law, including but not limited to offenses involving coercion, enticement, and sexual exploitation of minors, forced labor, and sex trafficking. Prior to being employed as a Special Agent with the FBI, I was employed as a Staff Operations Specialist for the FBI for over nine years.

3.      I have received training related to the investigation and enforcement of federal human trafficking laws. As a result of this training and my experience, I am familiar with the technologies traffickers use to recruit, communicate with, and exploit their victims. These include posting online advertisements for commercial sex dates, communicating electronically with prospective commercial sex buyers, and distributing sexually explicit images and videos of trafficking victims. I have also received more general training and gained experience in interviewing techniques, search warrant applications, the execution of searches and seizures, and the seizure, processing and identification of electronic evidence.

4.     The facts in this affidavit come from my personal observations, my training and experience, information obtained from citizen witnesses, and information reported to me by other law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, "case agents," "officers," "detectives," or "investigators" refers to the federal, state, and local law enforcement officers who have participated directly in this investigation, and with whom I have acquired information from and/or had contact regarding this investigation.

5.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**IDENTIFICATION OF THE DEVICES TO BE EXAMINED**

6.     I make this affidavit in support of an application for the issuance of a warrant to search the following electronic devices:

    a.  a gray iPhone with a purple case with a 3-lens camera (hereinafter "**Target Phone 1**;" and

    b.  a rose gold iPhone with a 3-lens camera (hereinafter "**Target Phone 2**");

collectively referred to in this affidavit as "**the Target Phones**" and described further in Attachment A. Both of the **Target Phones** are presently securely stored in the custody of the Franklin Police Department property room at 9455 West Loomis Road, Franklin, Wisconsin.

7.     There is probable cause to believe that the **Target Phones** listed above have been used as instrumentalities of, and contain evidence of, violations of Title 18, United States Code, Sections 1591(a)(1), (b)(1) (sex trafficking by force, fraud, or coercion).

2

**PROBABLE CAUSE**

**A.     Recovery of the Target Phones**

8.      On Monday, September 25, 2023, at 0145 hours, City of Franklin Police Officer Christopher Krakau was sitting stationary in the 10600 block of South 27th Street in Franklin, Wisconsin. Officer Krakau observed a 2012 black Audi A7 traveling northbound on South 27th Street. This vehicle was not displaying a front license plate.

9.      Officer Krakau, who was in a City of Franklin Police Department squad car, got directly behind the vehicle without losing sight of it. The vehicle was displaying a rear license plate of AUD-4301. Officer Krakau activated his emergency lights, stopping the vehicle near the intersection of South 27th Street and West Southbranch Boulevard.

10.      Officer Krakau contacted the driver of the vehicle and identified him as Dantavia Vernard RULE, DOB: 03/17/1994. There were no other passengers in the vehicle. RULE provided proof of insurance to Officer Krakau by showing it to him on an iPhone with a purple case, **Target Phone 1**.

11.      As Officer Krakau was speaking to RULE, he observed an odor of fresh marijuana emanating from the vehicle. Officer Krakau instructed RULE to step out of the vehicle so that Officer Krakau could perform a probable case search of the vehicle. RULE complied.

12.      During his search, Officer Krakau located 20 grams of marijuana underneath the driver seat of the Audi A7. Also in the vehicle, on the front passenger seat, was a rose gold iPhone that was powered on, **Target Phone 2**. Officer Krakau also located an apartment rental contract for a female named Madison DAHSE at 8720 North Deerwood Drive, Brown Deer, Wisconsin. The contract indicated that RULE had paid an online fee for the rental of $260 on September 22,

3

2023 by RULE. Additionally, Officer Krakau located a money order receipt for $803 US dollars from DAHSE made on September 22, 2023.

13.    After he completed his search, Officer Krakau advised RULE that he was under arrest for Possession of Marijuana.

**B.    Earlier Sex Trafficking Investigation Involving RULE**

14.    On Friday, November 5, 2021, FBI Milwaukee received information from the Milwaukee Police Department (MPD) regarding an anonymous tip they received alleging that prostitution, drug dealing, illegal firearms, and Paycheck Protection Program (PPP) loan fraud was occurring at 401 West Michigan Street Apartment #406, Milwaukee, Wisconsin. The tip alleged that $800,000 in cash was being stored at the West Michigan address. The tip also claimed that the "top four" women listed on EROS.com, a website used for commercial sex advertisements, were associated with the West Michigan address.

15.    Included in the anonymous tip received by MPD was a screenshot from an Instagram account under the name "RULEYRULE" capturing a photo that depicted four black males. The photo was captioned, "Build you a team so strong till where they don't know who's boss #m.a.d.e.s.i.c.k." Law enforcement compared the photo provided in the anonymous tip to publicly available open-source social media account information and Department of Transportation photos. It was determined that the Instagram account belonged to RULE and that RULE was one of the four individuals depicted in the photo. Two of the other males depicted were identified as Jimmy DURANT, Jr. and Maurice RUSSELL.

16.    Case agents began working to follow up on this tip. They learned that RULE, DURANT, RUSSELL, and several females associated with them were known to make fairly frequent trips out of state to places like Miami, where they often rented Airbnb properties and

4

stayed for some length of time. Case agents also discovered that many of the females associated with this group were posted on known commercial sex websites such as Skipthegames.com and Megapersonals.com. FBI and MPD also developed additional information about specifically DURANT's alleged involvement in sex trafficking, including through a second anonymous tip. Case agents conducted surveillance outside of an apartment complex located at 401 W. Michigan Avenue in Milwaukee, where the subjects were renting an apartment, and these females were seen coming and going, with or without the aforementioned subjects, often in luxury vehicles. These same luxury vehicles were seen in photos and videos posted by the subjects on social media sites like Instagram, Facebook, and TikTok. In some of the videos, the subjects were accompanied by groups of different women or are seen pouring champagne. In one photo posted to RULE's Facebook page, RULE is seen posing in front of one of the vehicles while displaying a firearm.

17.     On Saturday, January 28, 2023, a woman named Jessica WILSON submitted an online tip to the FBI National Threat Operations Center (NTOC) stating that she believed her 22-year-old daughter Madison DAHSE was being abused and trafficked by a man named Dantavia RULE. WILSON stated RULE controls DAHSE and won't allow DAHSE to go out without him. She also stated that DAHSE had disclosed to her that RULE beats DAHSE. Additionally, WILSON stated that RULE made DAHSE get a stripping job and would go to bars and pick up men for DAHSE to "hang out with" for money.

18.     On Thursday, February 2, 2023, IRS Special Agent Ashley Bradaric and Task Force Officer Neal Lofy conducted a phone interview of WILSON. WILSON confirmed that DAHSE had been in a relationship with RULE for several months and that RULE had assaulted DAHSE, leaving marks on her body. DAHSE made statements to WILSON that RULE takes DAHSE's money and had forced DAHSE to work at On the Border (OTB), a strip club in Franklin,

5

Wisconsin. Additionally, WILSON stated RULE is in a business relationship with a few other people from Mississippi running AirBNB properties. SA Bradaric and TFO Lofy were aware that RUSSELL and DURANT both have ties to the state of Mississippi.

19. On Wednesday, March 8, 2023, Special Agent Kathrine Karlsen and Task Force Officer Gary Schneider conducted an interview of WILSON. WILSON stated DAHSE started dating RULE in August 2022 and they met through a middle school friend of DAHSE's named Taylor POPPE. At the time, POPPE was a dancer at OTB strip club in Franklin. WILSON stated that since approximately the summer of 2021, DAHSE had been driving POPPE to OTB and would sometimes hang out with her.

20. At first, WILSON believed RULE was DAHSE's boyfriend. He would come over to WILSON's home for dinner or other social visits, and they appeared to have a traditional relationship. WILSON stated when DAHSE started dating RULE, she began to dress differently. DAHSE told WILSON that RULE picks out her clothes for her and he didn't allow DAHSE to "talk ghetto" anymore, meaning he would not allow her to curse.

21. WILSON also stated RULE carries a Glock handgun and has seen RULE carry the Glock in his pocket.

22. Around October 2022, WILSON noticed that DAHSE started drinking more. DAHSE also stayed in RULE's apartment in downtown Milwaukee, which WILSON believed to be owned by Jimmy DURANT. WILSON stated RULE is from Mississippi and came to Milwaukee with ten guys to open up Airbnb properties. WILSON identified DURANT, Maurice RUSSELL, and several females associated with them as being part of that group.

23. WILSON stated DAHSE called her on Saturday, January 21, 2023 and asked WILSON to pick her up from RULE's apartment in downtown Milwaukee. During that call,

6

DAHSE told WILSON that RULE had been beating her for months. WILSON went to pick up DAHSE. DAHSE told WILSON she was tired but that she had to go to work at OTB. DAHSE told WILSON that RULE made her work double shifts at OTB since the fall of 2022.

24. DAHSE had told RULE that she had a goal of opening a clothing store. She said RULE had told her that in order to make this a reality, she needed to earn money. RULE convinced her to begin stripping at OTB in order to make this money, however once she began, he required her to give him all the money she made there.

25. Ultimately, DAHSE did not want to leave with WILSON. DAHSE called a friend named Areana HERRON, a.k.a. "Kendra," to come and get her. HERRON advised DAHSE she should report RULE to law enforcement, however DAHSE did not want to do so at that time, and ended up leaving with HERRON.

26. In early February 2023, WILSON informed case agents that she had lost contact with DAHSE, which concerned her because DAHSE ordinarily responded to texts and calls from WILSON fairly promptly. WILSON indicated she had asked POPPE about RULE, and POPPE told WILSON RULE was a pimp. POPPE also told WILSON that in 2021, she had been living out of a motel, which RULE had been paying for. RULE wanted POPPE to move into his apartment in downtown Milwaukee, however POPPE said she did not want to. WILSON stated RULE wanted POPPE to pay him for the "information" RULE had been providing to POPPE. In my training and experience, I know that sex traffickers or pimps frequently impress upon their victims that their "game," or their knowledge about how to make money from prostitution, is valuable, and that their victims owe them a debt because of their willingness to "coach" or "train" their victims. POPPE told WILSON she was eventually kicked out of the motel.

7

27.     During the interview, WILSON provided one of the phone numbers DAHSE uses as a local number ending in -3695. A few days later, WILSON informed case agents that she was able to locate DAHSE at OTB.

28.     On Wednesday, April 5, 2023, SA Karlsen conducted an interview of POPPE. POPPE stated she met RULE while dancing at OTB the year she turned twenty (2021). RULE didn't spend money on dances, but he talked with POPPE and gave her his cellphone number. RULE and POPPE chatted for about five months prior to POPPE moving in with RULE.

29.     POPPE said she was living at American Motel in Franklin before moving in with RULE. RULE told POPPE she had to make him at least $1,200 per day in order to stay with him. POPPE gave most of the money she earned to RULE, but she indicated that she did manage to put some money aside for herself that RULE did not know about.

30.     POPPE stated RULE would line up dates for her to go on. POPPE did not know which sites RULE used to advertise for the dates. At first, the dates were just ordinary dates, but then she was offered $2,500 to conduct sex acts. RULE set the prices for the dates and wanted POPPE to engage in commercial sex acts. POPPE estimated she went on thirty (30) dates that RULE arranged, however she claimed she did not perform any sex acts during those dates. RULE was angry at her for not performing commercial sex acts and would threaten to beat POPPE. Eventually, around September 2022, POPPE decided to leave RULE.

31.     On Friday, May 26, 2023, SA Karlsen received a phone call from WILSON. WILSON stated RULE had beaten DAHSE again. DAHSE reported the incident to the police but did not go to the hospital after the incident.

32.     Milwaukee Police Department report 231460031, dated May 26, 2023, details the incident between suspect RULE and victim DAHSE. According to the report, police were

8

dispatched to a call for a subject with gun call at 700 E. Kilbourn Ave. in Milwaukee. DAHSE was outside the apartment complex when the police arrived, and she was described as emotional and intoxicated. DAHSE explained to the police that RULE came home at approximately 1:00am and was upset because DAHSE's friend was still in the apartment. DAHSE's friend left because RULE was upset. After DAHSE's friend left, RULE stayed angry and told DAHSE she had to leave, but DAHSE told RULE she had nowhere else to go. DAHSE stated RULE put her suitcase outside of the apartment and continued to try to force her to leave by grabbing at her. DAHSE stated she curled up on the ground and RULE started to strike her with a closed fist and kick her. DAHSE stated RULE struck her all over her body, including on her head, face, side, arms, and legs. MPD Police Officer Benjamin DELANEY observed minor contusions on DAHSE's nose, right elbow, right forearm, and left hip. DAHSE stated her left side by her ribs was in pain, but PO DELANEY did not observe any injuries there. DAHSE admitted to being intoxicated and stated RULE was sober during this incident. On the domestic violence assessment, DAHSE answered "yes" to a question asking whether RULE owns a firearm, but added that he has a valid CCW permit, as far as she knows. She also answered "yes" that they have separated many times while living together over the past year.

33. On the night of the incident, MPD officers searched for RULE but were unable to locate him. DAHSE was offered but declined the opportunity to speak to someone at the DV Hotline.

34. Throughout these contacts with WILSON, I continued to express interest in speaking directly to DAHSE about her broader experience with RULE. WILSON told me, however, that whenever she broached this subject with DAHSE, DAHSE always said she did not want to talk to anyone in law enforcement about RULE.

9

35. Meanwhile, on Thursday July 20, 2023, FBI TFO Mark Goers and FBI SA Amy Mentzel conducted an interview of a 20-year-old woman named Marshade A. ROSE who was encountered during a targeted human trafficking victim recovery operation. An undercover officer responded to an online commercial sex advertisement for ROSE, and a date was negotiated. The ad read "no AA and young Hispanics but hi guys, are you looking for a movie magical fantasy fun time with the girl of your dreams look at any longer contact now by contacting you agree that you are not affiliated with any form of law enforcement and that donations are for time and companionship only. Anything else that may occur is between two consenting adults." Included in the ad were five pictures of an African-American female.

36. The undercover provided an Uber, which picked ROSE up from 700 East Kilbourn Avenue in Milwaukee and brought her to a hotel in Oak Creek, where the operation was set up. This address was familiar to members of the operation team as the apartment complex where RULE was believed to be living at that time. The team therefore suspected it was possible that ROSE may be a victim of RULE.

37. At the time of FBI's encounter with ROSE, ROSE was in possession of two cell phones—one black iPhone and one red iPhone—which she gave law enforcement consent to digitally image. While TFO Goers was documenting the items in ROSE's purse, a phone call came through on ROSE's black iPhone. The caller name displayed was "Zeus."

38. ROSE was shown the ad law enforcement had responded to. ROSE stated she had never seen the ad before because "Zeus" makes all of her ads. ROSE stated the only thing she had seen from the ad was the pictures attached to it, which she had taken from an unknown Instagram account because "Zeus" did not want to use real photos of her.

10

39.     ROSE said "Zeus" told her to leave her phone on at all times, and that if a prospective date responded to one of her ads, she should let him know right away and he would coach her via text message what to say. Following this interview, ROSE gave case agents consent to search the phones she was carrying. Case agents observed these "coaching" text messages between ROSE and the contact she had saved as "Zeus."

40.     ROSE stated she met "Zeus" on Instagram several months earlier and started communicating with him. At the time of these communications, ROSE had an Instagram handle of "ROSE ROYCE." She could not remember "Zeus'" Instagram because he had deleted her account once she started working for him. ROSE said "Zeus" had a 'P' emoji on his Instagram account, which she knew from her experience and knowledge meant that he was a pimp.

41.     "Zeus" told ROSE he would help her and take care of her financially. "Zeus" offered to throw a 21st birthday party for ROSE if she worked for him as one of his "girls," performing commercial sex acts. "Zeus" also agreed to take over her vehicle payments and said he would by her food and clothing as long as she worked for him.

42.     ROSE said "Zeus" had purchased one of the phones ROSE was in possession of at the time of her arrest. She also said "Zeus" had installed an app on the phone called Life360 that allowed him to track ROSE's location. ROSE explained that "Zeus" had told her she needed to always keep her location turned on so that "Zeus" could monitor where she is going.

43.     ROSE said "Zeus" provided her with approximately 30 to 50 Trojan condoms in a variety pack and instructed her that she is never to have sex on dates without using them. "Zeus" told ROSE if she needs anything for her basic needs or any extra things that she is to call him, and he will get it for her. ROSE stated there had been times when she told "Zeus" she was hungry, and he brought her food. At the time of the interview, ROSE was wearing approximately three-inch

11

acrylic fingernails. ROSE stated "Zeus" paid for her manicure out of the money ROSE made while preforming sex dates.

44.     ROSE stated "Zeus" has had sexual intercourse with her multiple times and has asked ROSE to get on birth control. "Zeus" told ROSE he pimps multiple girls and makes a lot of money doing it.

45.     ROSE stated she was picked up in an Uber that evening in front of "Zeus'" apartment, which she identified as being located on the 7th floor of 700 E. Kilbourn Avenue in Milwaukee. ROSE was supposed to complete the commercial sex date and then return by Uber to "Zeus'" apartment and give him $600, the negotiated price for the sex act.

46.     ROSE stated "Zeus" has told her he has a firearm and that he carries it on him from time to time.

47.     At this point, ROSE was shown a photograph of RULE and asked whether the individual depicted was Zeus. ROSE looked at the photograph and confirmed that it was "Zeus." ROSE also stated that RULE was her pimp and that she also knew him as "Ruley."

48.     ROSE was asked numerous times if RULE had ever physically harmed her or threated to harm her. ROSE stated she has not been harmed by RULE however, one of RULE'S other girls, "SOPHIE," warned her that there is a fine line with RULE. ROSE related a story about a time when ROSE was "play-fighting" with RULE. At some point, she says she hit RULE too hard, and the tone changed from joking to anger. RULE began yelling at ROSE, then left the apartment. Afterwards, SOPHIE told ROSE that RULE had a list of rules that she needed to follow, and if she didn't, there would be consequences for her actions. ROSE was warned several times not to disrespect RULE or else RULE would deal with her. ROSE would not elaborate further and refused to say what these consequences might be.

12

49. ROSE told the interviewing agents that she was going to stay with a friend and provided a few contacts that the agents could reach out to in order to follow up with ROSE. A few days later, TFO Goers attempted to contact ROSE, however he was unable to locate her. Later that day, ROSE sent TFO Goers a text message later stated she no longer wanted to talk to him and asking him to stop reaching out to her.

50. On Wednesday, September 20, 2023, Special Agent Karlsen received a phone call from WILSON. WILSON stated she had last spoken to DAHSE on Tuesday, September 19, 2023, and that DAHSE reported she was unhappy and wanted to kill herself, but she was too scared to act on those ideations. DAHSE wanted to go to rehab for her drug and drinking problems and told WILSON that she has to drink in order to get through the commercial sex dates RULE requires her to perform. Additionally, DAHSE told WILSON that RULE continues to beat her. DAHSE indicated that she and RULE were staying at a hotel, however DAHSE did not disclose which hotel they were staying at.

51. I researched the -3695 phone number that WILSON had given for DAHSE and located a commercial sex ad associated with that number that was posted on the website AdultSearch.com on March 10, 2023. Two photos within the ad depicted DAHSE. One photo showed DAHSE wearing a black and a white checkered long sleeve short dress with black knee-high boots. The photo appears to be taken at the Pfister Hotel based on the carpet and décor. The second photo is of DAHSE wearing red underwear and light-colored platform heals in what appears to be the OTB dancers' locker room.

52. On Friday, September 22, 2023, WILSON confirmed that the female depicted in the black and white checkered dress was DAHSE. The text of the ad where that photo was found read, "Hi Guys are you looking for a move magical Fantasy Fun time with the girl of your dreams

13

look any longer contact now [XXXXXX3695] by contacting you agree that you are not affiliated with any form of law enforcement and that donations are for time and companionship only. Anything else that may occur is between two consenting adults." I noted that this language was very similar to the language that appeared in the above-described ad for ROSE, suggesting the text was written by the same person.

53. Since then, WILSON has sent me several messages giving me additional insight into the relationship between RULE and DAHSE. WILSON conveyed that DAHSE presently does not have a phone and that RULE had taken DAHSE's phone from her. WILSON said this was a common occurrence and that RULE had taken and/or broken several phones from DAHSE in the past, including by throwing DAHSE's phone out of windows or cars when RULE felt she was not listening to him.

54. WILSON also said DAHSE had told her that RULE was violent with her because he claimed she was stubborn and did not want to do what he wanted her to do, however sometimes, RULE was violent with her without any apparent reason or provocation. For example, DAHSE might be "just sitting there," and RULE would hit her.

55. WILSON added that DAHSE had told her that RULE was arranging commercial sex dates with a regular client named Scott not only for DAHSE, but also for another female named "Dior."

C.     **Probable Cause Concerning the Target Phones**

56. Based on the foregoing, there is probable cause to believe that RULE is engaged in sex trafficking. I know in my training and experience that when an individual uses or is instructed to use an electronic device to further a sex trafficking operation, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and as a storage medium

14

for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime, including data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

57. Many traffickers and pimps post advertisements or communicate with known and potential victims or clients through the use of digital devices, computers and the Internet. These ads and communications, along with the related accounts used, may contain evidence, including of victims' names, location information, or descriptions of criminal acts. Traffickers and pimps commonly take photographs for prostitution advertisements on cameras, cellular telephones, and other electronic devices. These photographs can then be uploaded directly to the Internet or transferred to another electronic medium. Traffickers and pimps frequently retain photographs of current and former persons they are sexually exploiting or have sexually exploited, on electronic devices. Traffickers and pimps also utilize cellular telephones to direct victims in the commercial sex trade, through direct conversation and text messaging. These instructions commonly include such things as when and where to work, what to say to prospective commercial sex buyers, and how much to charge for particular services. Traffickers also commonly transport their victims to prostitution tracks or outcall prostitution dates, and they often use digital devices to navigate to those locations. Furthermore, traffickers often use technology to track their victims' locations, such as through apps installed on their phones. There is evidence, based on the interviews described above, that most—if not all—of these generalities are true in this case.

58. The **Target Phones** are currently in secure storage at Franklin Police Department property room. In my training and experience, I know that the **Target Phones** have been stored in a manner in which their contents are, to the extent material to this investigation, in

15

substantially the same state as they were when the **Target Phones** first came into the possession of the Franklin Police Department on September 25, 2023.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

59.     Based on my training, experience, and research, I know that the **Target Phones** have capabilities that allow them to serve as wireless telephones, digital cameras, portable media players, GPS navigation devices, and PDAs, among others. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

60.     Based on my knowledge, training, and experience, I know that electronic devices like the **Target Phones** can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

61.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the **Target Phones** were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the **Target Phones** because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file.

   b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw

16

conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

62. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

63. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

64. *Delayed notice.* I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize delayed notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to Rule would seriously jeopardize the ongoing investigation, as such a disclosure would give him an opportunity to destroy

17

evidence, change patterns of behavior, notify confederates, or otherwise attempt to thwart the prosecution. See 18 U.S.C. § 3103a(b)(1).

## **CONCLUSION**

65.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the **Target Phones** described in Attachment A to seek the items described in Attachment B.

18

# ATTACHMENT A

## Premises to Be Searched

The below-described **Target Phones**, which are securely stored at the Franklin Police Department property room, located at 9455 West Loomis Road, Franklin, Wisconsin; to wit:

- A gray Apple iPhone in purple case with 3-lens camera on property inventory number 23-001549-3.

- A rose gold Apple iPhone with a 3-lens camera on property inventory number 23-001549-2.

## ATTACHMENT B

### Evidence to Be Seized

All records on the electronics described in Attachment A that relate to violations of Title 18, United States Code, Section 1591(a) (sex trafficking by force, fraud, or coercion) involving Dantavia Rule, including:

    a. All stored electronic communications, including email, instant messaging, text messaging, multimedia messaging, and communications in third party apps;

    b. All contact lists and records of communications with those contacts, including call logs and written messages of any kind;

    c. All images, videos, travel records, information related to the identity of victims, and any other content or records on the phone.

    d. All photographs or videos;

    e. All records evidencing travel and device location information, including GPS locations, map or navigation apps, phone tracking apps, and Internet Protocol addresses;

    f. All web browsing history;

    g. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phone books, calendars, and saved usernames and passwords.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law

2

enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

3